UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
HEBEI EXPRESS SHIPPING CO., LTD., :
                                  :    **ECF**
                     Plaintiff,   :    **FIRST AMENDED**
                                  :    **VERIFIED COMPLAINT**
          -against-               :    **07 Civ. 3388 (MGC)**
                                  :
TRANSNATIONAL TRADING             :
                                  :
                     Defendant.   :
--------------------------------x

MAY 0 1 2007

      Plaintiff, HEBEI EXPRESS SHIPPING CO., LTD.,
(hereinafter referred to as "Plaintiff"), by and through its
attorneys, Cardillo & Corbett, as and for its Verified
Complaint against the Defendant, TRANSNATIONAL TRADING,
(hereinafter referred to as "Defendant") alleges, upon
information and belief, as follows:

<u>JURISDICTION</u>

      1.    This is an admiralty and maritime claim within
the meaning of Rule 9(h) of the Federal Rules of Civil
Procedure and 28 United States Code § 1333.

<u>THE PARTIES</u>

      2.    At all times material to this action, Plaintiff
was, and still is, a foreign company duly organized and
existing under the laws of Hong Kong with an address at Room
3511, 35f, West Tower, Shun Tak Centre, 168-200 Connaught Road
Central, Sheung Wan, Hong Kong.

3.    Plaintiff is and was, at all material times, the registered owner of the M/V HEBEI EXPRESS (the "Vessel").

4.    Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of a foreign country, with an address at LOB 15, No. 130, JAFZA, Jebel Ali, P.O. Box 17621, Dubai, United Arab Emirates, and was at all material times the charterer of the Vessel.

<u>DEFENDANT'S BREACH OF CONTRACT</u>

5.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-4 of this Complaint as if set forth at length herein.

6.    Plaintiff and Defendant entered into a time charter party dated January 3, 2007, pursuant to which Plaintiff let and Defendant hired the Vessel (the "Charter Party"), a copy of which is annexed hereto as Exhibit 1.

7.    Under the terms of the Charter Party, it was the duty of Defendant as charterer of the Vessel to pay hire semi-monthly in advance in U.S. dollars at the rate of $24,500 per day commencing from the time of delivery of the Vessel under the Charter Party until the date of her redelivery.

8.    The Vessel arrived at the delivery port four hours before the commencement of the lay days, that is, the commencement of the time within which Plaintiff had the right

to deliver the vessel and Defendant the obligation to accept her. The Defendant, however, agreed to accept the early delivery of the vessel and pay hire for the use of the vessel from the time the Vessel tendered her notice of readiness. The hire due for the four hours is $3,956. See Exhibit 2 attached hereto.

9. Defendant redelivered the Vessel to Plaintiff on February 11, 2007, and sent the Plaintiff a hire statement which admitted hire due to the Plaintiff in the amount of $74,337.74. Defendant, however, failed and refused to pay the hire due Plaintiff, advising Plaintiff that it would not pay the hire admittedly due, unless Plaintiff waived the $3,956 due for the four hours prior to the commencement of the lay days during which Defendant had use of the Vessel. Defendant thereby reneged on the agreement made at the time the Vessel was delivered and is withholding payment on a substantial amount of hire that is admittedly due and owing. Charterers' hire statement is attached hereto as Exhibit 3.

10. According to Plaintiff's calculations, the actual amount of hire now due and owing is $78,452.40, which includes the $3,956 for the four hours now at issue.

11. Plaintiff protested Defendant's wrongful actions and has demanded payment of $78,452.40 which Defendant has continued to refuse and fail to pay.

3

12. By reason of the aforesaid, Plaintiff has suffered damages in the amount of $78,452.40, so near as the same can be presently estimated. In addition Plaintiff is entitled to recover interest, attorneys' fees and costs as set forth below.

### LONDON ARBITRATION

13. The Charter Party provides that any disputes arising under the Charter Party shall be referred to arbitration in London under English law.

14. Plaintiff has appointed an arbitrator and commenced arbitration in London against Defendant, and Plaintiff's claims are now the subject of that arbitration. See Exhibit 4 attached hereto.

### PLAINTIFF'S DAMAGES

15. Interest costs and attorneys' fees are routinely awarded to the prevailing party under English law. As best as can now be estimated, if and when the matter is brought to arbitration in London, Plaintiff expects to recover the following amounts from Defendant:

| | | |
|---|---|---|
| A. | Principal claim: | $ 78,452.40 |
| B. | Interest, arbitration fees and attorneys' fees: | $ 41,547.60 |
| | Total: | $120,000.00 |

4

DEFENDANT NOT FOUND WITHIN THE DISTRICT

16.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are believed to be due and owing to the Defendant.

17.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia,* any property of the Defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the Defendant, and to secure Plaintiff's claim as described above.

**WHEREFORE,** Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN Amro Bank NV, American Express Bank, Bank of America, Bank of Communications Co. Ltd. New York Branch, Bank of New York, Barclays Bank, BNP Paribas, Citibank, Deutsche Bank, HSBC (USA) Bank, J.P. Morgan Chase, Standard Chartered Bank, UBS AG and/or Wachovia Bank, which are due and owing to the Defendant, in the amount of $120,000.00 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated

6

with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

        D.    That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:    New York, New York
           May 1, 2007

                          CARDILLO & CORBETT
                          Attorneys for Plaintiff
                          HEBEI PRIDE SHIPPING CO., LTD

By:                                    
                          Tulio R. Prieto (TP 8455)

                          Office and P.O. Address
                          29 Broadway, Suite 1710
                          New York, New York 10006
                          Tel: (212) 344-0464
                          Fax: (212) 797-1212

**ATTORNEY'S VERIFICATION**

State of New York )
                  ) ss.:
County of New York)

1.    My name is Tulio R. Prieto.

2.    I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.    I am a partner in the firm of Cardillo & Corbett, attorneys for the Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.    The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.    The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on

8

behalf of the Plaintiff.

_____
Tulio R. Prieto

Sworn to this 1st day
of May, 2007

CHRISTOPHIL B. COSTAS
Notary Public, State of New York
No. 31-0773693
Qualified in New York County
Commission Expires April 30, 2011

# EXHIBIT
# 1

Cao Rui

| | |
|---|---|
| 寄件者: | "Wendy, Yang Weiwei" <wendy@bromar.com.cn> |
| 收件者: | "Feng shaohui" <FENG@NORTHCHINA.COM.HK> |
| 副本: | "Lv Huan Hong" <ops@northchina.com.hk>; "Bromar ops" <ops@bromar.com.cn> |
| 傳送日期: | Wednesday, 3 January, 2007 22:19 |
| 主旨: | RE: MV.HEBEI EXPRESS / TNT DUBAI - C/P DTD 3RD JAN 2007---clean recap |

Good day from Bromar Maritime Co. ltd!

Pub:86-21-58215780  Fax:86-21-58215769

Email: chartering@bromar.com.cn

To: Xiao Feng/NCS
Fm: Kevin / Bromar


RE : MV.HEBEI EXPRESS / TNT DUBAI - C/P DTD 3RD JAN 2007
====


TKS CONFIRMING CHTRS LAST NOW VESSEL IS CLEAN FIXED WITH C/P
DTD 3RD JAN 2006 - FOR GOOD ORDER SAKE WE GIVE BELOW  THE
CLEAN FIXTURE RE-CAP


MV HEBEI EXPRESS
SDBC, 84 BLT , HKG FLAG
DWT 65,204 MT ON SSW 12.355 M  TPC 72.44 ,
GRT/NRT 39537/23773 , LOA/BM 253.93/32.28 M
9H/11H  GEARLESS
CAPACITY : 1) 6,302.0  2) 13,408.5  3) 7,999.8  4) 9,186.0
5) 9,186.0  6) 9,186.0  7) 7,999.2  8) 13,959.5  9) 6,770.8
TTL 83,997.2 CBM
HATCH SIZE : 1) 11.00 X 15.60  2A.2B.3.4.5.6.7.8A. 8B. 9)
11.70 X 15.60    HATCH HIGHT 2.195 M
ABT 12.5/L , 13.0/B ON ABT 29.5/L, 29.3/B  IFO180CST (RME 25)
PLUS ABT 2.5 MT OF MGO ( DMA) AT SEA
IN PORT ABT 2.8 MT MGO IDLE WORKING 3.0 MT MGO
THE SPEED/CONSUMPTION BSS GOOD WEATHER AND SEA CONDITION
UPTO BFT4 AND DGLS 3 AND NOADVERS CURRENT VSL M/E MAY
CONSUME MGO WHEN NECESSARY AT MASTER DISCRETION .
A.D.A  W.O.G


- OWNERS FULL STYLE TO BE INCORPORATED IN THE C/P:

FOR

- A/C TRANSNATIONAL TRADING, DUBAI


3/1/2007

- DELY AFSPS LANSHAN ATDNSHINC

- L/CAN : 1400 HRS LT 05TH JAN - 2359 HRS LT 07 JAN 2007

- 1 TCT VIA SP/S SB/S SA/S ALWAYS AFLOAT AND ALWAYS WITHIN IWL
  WITH SLAG IN BULK  AG/PG - DUR ABT 30-35 DAYS WOG

- C/HIRE USD 24,500DIOT + USD55,000 B.B.

- 1ST C/HIRE PAYABLE EVERY 15 DAYS IN ADVANCE INTO OWS NOMINATED BANK
  ACCNT.
  1ST C/HIRE TOGETHER WITH ESTD CONS WILL BE REMITTED WITHIN 3 BANKING
  DAYS AFTER VSL'S DLY.

- RDLY DLOSP PASSING MUSCAT ATDNFHINC

-VSL ON ARRIVAL AT LOADPORT TO HAVE HOLDS CLEAN / DRY AND READY TO
  RECEIVE  CHTRS CARGO TO INDEPENDENT SURVEYORS SATISFACTION. SHUD VSL
  BE REJECTED,CAPTAIN TO ARRANGE CLEANING RIGHT AWAY AND SURVEYOR TO
  REINSPECT RIGHT   AFTER CLEANING IS FINISHED. VSL TO GO OFF-HIRE FROM
  TIME OF REJECTION  UNTIL VSL IS READY AGAIN FOR 2ND INSPECTION. Any
  directly related expenses incurred  to be for owners ACCOUNT.

- IN LIEU OF HOLD CLEANING/DEBRIS REMOVAL ON REDELY USD 4500 LUMPSUM

- CABLES/VICTUALLING/ENTERTAINMENT - CHTRS TO PAY USD 1250 PER MONTH
  (30 DAYS) ON PRORATA. - BUNKERS CL

- VSL TO BE DELIVERED TO CHRS WITH  ABT 1300.MT IFO + ABT 150MT MGO
  BUNKER ON REDEL TO BS SAME AS ON BUNKERS ON DELY
  BUNKER PRICES USD300PMT FOR IFO AND USD600MT FOR MGO

- CHTRS WILL MAKE EVERY ENDEAVOUR TO ENSURE THAT ORIGINAL BILL OF LADING
  IS AVAILABLE AT DISPORT ON OR BEFORE VSLS ARRIVAL TO DISCH. HOWEVER IF
  ORIGINAL BILL OF LADING IS NOT AVAILABLE AT DISPORT, THE OWNERS/MASTER
  TO PERMIT DISCH OF CARGO WITHOUT DELAY AGAINST CHTRS SIMPLE LOI BASED
  ON OWNERS PANDI CLUB STANDARD WORDING SIGNED / STAMPED BY CHTRS ONLY
  ON THEIR LETTERHEAD.

- GA IN LONDON, ENGLISH LAW TO APPLY

- IF REQUIRED BY CHRS, VSL'S CREW TO SEAL VSL'S HATCHES WITH MARINE
  TAPE (RAMNECK OR SIMILAR WHICH TO BE SUPPLIED AND PAID FOR BY CHRS) AND
  VSL TO BE ON HIRE.

- ALL NEGOTIATIONS/ EVENTUAL FIXTURES TO BE REMAIN STRICTLY CONFIDENT
  AND NOT TO BE REPORTED TO 3RD PARTY

- OWNERS TO PROVIDE ALL CERTIFICATES (AS PER CHARTERES REQUEST) AFTER
  FIXING MAIN TERMS. OWNS TO PROVIDE COPY OF GA PLAN FOR NOMIATION TO
  SHIPPERS.

- 3.75% TTL (I.E. 2.5PCT ADCOM +  1.25% TO SHARED EQUALLY BETWEEN JMBAXI
  NEW DELHI AND OWNERS BROKERS )

- OWISE MV "HEBEI EXPRESS C/P DTD 17TH NOV 2006 WITH LOGICAL / APPLICABLE
  AMENDMENTS EXCEPT :-


MAIN BODY
=========

LINE 95 : DEL "BUT NOT LATER THEN 4PM"



RIDERS
======

CLAUSE : 29 - CARGO TO BE CARRIED UNDER THIS C/P IS BLAST FURNACE
              SLAG IN BULK AND LOADING IN ACCORDANCE WITH IMO
              RECOMMENDATION.

CLAUSE 33 : ADD "BUNKERS" BETWEEN HIRE AND SURVEYS


CLAUSE 30 :  TRADING LIMITS - PRC, SINGAPORE, UAE ALWAYS TO BE ALLOWED

CLAUSE 46 :  AS PER MAIN TERMS

CLAUSE 47 :  AS PER MAIN TERMS

CLAUSE 72 :  ADD AT THE END "IN CASE OF ANY INCONSISTENCY BETWEEN WEATHER
             ROUTING SERVICE  REPORTS AND DECK LOGS. WEATHER ROUTING SERVICE
             REPORTS TO BE BINDING AND FINAL."
END


PLS CONFIRM ABV IS IN ORDER

THANKS YOUR KIND AND VALUABLE SUPPORT


Thanks & Best Regards

Wendy, Yang Weiwei
Mob: +86-13916026560
Msn: wendyang521@hotmail.com


3/1/2007

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party**, made and concluded in *Hong Kong* .................................................................*17th* .. day of *November* ........................ ~~19~~ *2006*

2 Between *HEBEI EXPRSS SHIPPING CO., LTD, Hong Kong* ..................................................................................................

3 Owners of the good ............*Hong Kong* ............................ ~~Steamship~~/Motorship ....*HEBEI EXPRESS (See Clause 61)* ........... of ........................................

4 ~~of.......................tons gross register, and............................tons net register, having engines of.............................indicated horse power~~

5 ~~and with hull, machinery and equipment in a thoroughly efficient state, and classed~~ ...................................................................................

6 ~~at..........................of about.......................cubic feet bale capacity, and about.............................tons of 2240 lbs.~~

7 ~~deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,~~

8 ~~allowing a minimum of fifty tons) on a draft of..........................feet.......................inches on.............................Summer freeboard, inclusive of permanent bunkers,~~

9 ~~which are of the capacity of about........................................................................tons of fuel, and capable of steaming, fully laden, under good weather~~

10 ~~conditions about.........................................knots on a consumption of about................................tons of best Welsh coal – best grade fuel oil – best grade Diesel oil,~~

11 now *trading*

12 ........................................ and *NOBLE CHARTERING INC.,* ...................................... Charterers of the City of ....*B.V.I.* ............................

13    **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14 about *one time charter trip via safe port(s), safe berth(s), safe anchourage(s), always afloat, always within Institute Warranty*

15 *Limits, in/out geographical rotation, via India intention West Coast to People's Republic of China with bulk harmless iron ore*

15 *but always excluding concentrate / HBI / DRI / DPI / sponge iron. Duration about 25-35 days without guarantee* within below

16 mentioned trading limits.

17 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17 the fulfilment of this Charter Party.

18 Vessel to be placed at the disposal of the Charterers, at *delivery Persian Gulf, Aden Outbound any time day or night Sundays and* .....................

19 *Holidays included.*

20 ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as~~

21 ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be~~

22 ~~ready to receive cargo with clean-swept holds~~ *(See Clause 46)* and tight, staunch, strong and in every way fitted for the service, having water ballast, ~~winches~~

22 ~~and~~

23 ~~donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same~~

24 ~~time~~ (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25 dise, ~~including petroleum or its products, in proper containers,~~ excluding *See Clause 29* ...................................................................

26 ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

27 ~~all necessary fittings and other requirements to be for account of Charterers),~~ in such lawful trades, between safe port and/or ports ~~in British North~~

28 ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

29 ~~Mexico, and/or South America~~ *within Institute Warranty Limits, but Charterers to ask Owners approval case by case if they can*

29 *breach Institute Warranty Limits against paying all additional expenses/premium and Owners approval not to be unreasonably*

29 *delayed* ~~and/or Europe~~

30 ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~

31 ~~October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

32 *See Clause 30* ...........................................................................................................

33 ...........................................................................................................

34 ...........................................................................................................

35 as the Charterers or their Agents shall direct, on the following conditions:

36   1.  That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the Crew; shall pay for the

37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water *also for garbage removal unless this*

37 *service is compulsory as custom of the port in which case, relevant cost to be considered as normal port expenses and to remain*

37 *for Charterers' account* and maintain her class and keep

38 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.

39   2.  That *whilst on hire* the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, Pilotages, Agencies, Commissions,

40 *Canal dues,* Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43 charter to be for Charterers account. ~~All other fumigations to be for Charterers account after vessel has been on charter for a continuous period~~

44 ~~of six months or more.~~

45 Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, ~~but~~

46 ~~Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards~~

47 ~~for dunnage, they making good any damage thereto.~~

48   ~~3.  That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on~~

49 ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than.......................tons and not more than~~

50 ~~.........................tons and to be re-delivered with not less than........................tons and not more than......................tons;~~

51   4.  That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD20,000 (Twenty thousand) Dollars daily including*

52 *overtime, hire payable every 15 days in advance* ~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53 ~~stores, on.........................................summer freeboard, per Calendar Month,~~ commencing on and from the day of her delivery, as aforesaid, and at

54 and after the same rate for any part of a month; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port People's Republic of China port in*

56 *Charterers' option at any time day or night Sundays and Holidays included* unless otherwise mutually agreed. Charterers are to give Owners

56 not less than ................................................................................................................................................................................................................................. days

57 notice of vessels expected date of re-delivery, and probable port. *(See Clause 52)*

58 5. Payment of said hire to be made in New York in cash in United States Currency, *15 days* semi-monthly in advance, and for the last *15 days* half

58 month or

59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. Time to count from 7 a.m. on the working day

63 following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they

64 to have the privilege of using vessel at once, such time used to count as hire.

65 Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68 6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place that Charterers or their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, except *not always afloat but safely aground in River Plate (not above*

69 *San Nicolas), and Brazil grain ports only, but excluding Porto Allegre and San Fransico Do Sul* at such places where it is customary for

69 similar size vessels to safely

70 lie aground.

71 7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

74 paying Owners ........................................................... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

74 incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense. *No passengers.*

75 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

77 agency; and Charterers are to load, stow, and trim the cargo at their expense under the supervision of the Captain, who is to sign, *or if required, is to*

78 *authorise Charterers' agent to sign* Bills of Lading for

78 cargo as presented, in conformity with Mate's *and*/or Tally Clerk's receipts *without prejudice to this Charter Party. Charterers to fully*

79 *indemnify Owners for all consequences of Master and/or Agents signing Bills of lading imposing on the vessel greater liablities*

79 *than the terms of this Charter Party.*

80 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of *USD* $1.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc., Charterers paying *USD 5.00* at the current rate per meal, for all such victualling.

86 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log *in English* of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89 sumption of fuel.

90 12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91 13. That the Charterers shall have the option of continuing this charter for a further period of ............................................................................................................

92 ................................................................................................................................................................................................................................................................................

93 on giving written notice thereof to the Owners or their Agents ........................................ days previous to the expiration of the first named term, or any declared option.

94 14. That if required by Charterers, time not to commence before *local time 0001 19th November, 2006* and should vessel

95 not have given written notice of readiness *delivered* on or before *2400 25th November, 2006 basis local time* ..... but not later than 4 p.m. Charterers or

96 their Agents to have the option of cancelling this Charter at any time -not later than the day of vessel's readiness.

97 15. That in the event of the loss of time from deficiency *strikes and/or default* of men *vessel's officers and crew* or stores, fire, breakdown or

97 damages to hull, machinery or equipment,

98 grounding, detention by average accidents to ship or cargo, *unless resulting from inherent vice, quality or defect of the cargo* drydocking for the

98 purpose of examination or painting bottom, or by any other cause

99 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101 thereof, and all extra expenses shall be deducted from the hire.

102 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105 The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106 purpose of saving life and property.

107 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons *in London* at New York,

108 one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109 the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial *shipping* men *and members of L.*

109 *M.A.A.*.

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights, *sub-hires* for any amounts due under this Charter, including General Aver-

111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113  might have priority over the title and interest of the owners in the vessel.

114  19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115  Crew's proportion. General Average shall be adjusted, stated and settled, ~~according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116  ~~York-Antwerp Rules 1924, at such port or place in the United States as may be selected by the carrier,~~ and as to matters not provided for by these
117  Rules, according to the laws and usages at the port of ~~New York.~~ ~~In such adjustment disbursements in foreign currencies shall be exchanged into~~
118  ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119  ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120  ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
121  ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122  ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123  ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124  ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125  ~~United States money.~~

126  ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~
127  ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128  ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129  ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130  ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131  ~~ships belonged to strangers.~~

132  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133  20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity,~~ and the
134  cost of replacing same, to be allowed by Owners.

135  ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136  ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137  ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138  *See Clause 84* ..........................................................................................................................................................................................................

139  .................................................................................................................................................................................................................................

14_/  .................................................................................................................................................................................................................................

141  ~~22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling lifts up to three tons, also~~
14_/  ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142  same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners ~~also~~ to provide *free of expense to Charterers sufficient*
142  *electrical lighting with the vessel's light clusters to permit work at all hatches and on board at the same time* ~~on the vessel lanterns~~
142  ~~and oil for~~
143  ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.~~ The
144  Charterers to have the use of any gear on board the vessel.

145  23. Vessel to work night and day, if required by Charterers, ~~and all winches to be at Charterers' disposal during loading and discharging;~~
146  ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~
147  ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148  ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or~~
149  ~~insufficient steam to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
150  ~~thereby.~~

151  ~~24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained~~
152  ~~in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;~~
153  ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both~~
154  ~~of which are to be included in all bills of lading issued hereunder:~~

155  ~~U. S. A. Clause Paramount~~

156  ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~
157  ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~
158  ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~
159  ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160  ~~Both to Blame Collision Clause~~

161  ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~
162  ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~
16_/  ~~hereunder will indemnify the Carrier against all loss or liability to the other non-carrying ship or her owners in so far as such loss~~
16_/  ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~
165  ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~
166  ~~owners as part of their claim against the carrying ship or cargo.~~

167  25. The vessel shall not be required to *follow ice breakers or* enter any ice-bound port, or any port where lights or light-ships have been or are about
167  to be with-
168  drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169  port or to get out after having completed loading or discharging.

170  26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171  navigation of the vessel, *acts of pilot and tugboats excluding strikes* insurance, crew, and all other matters, same as when trading for their own account.

172  27. A commission of ~~2 1/2~~ *1.25* per cent is payable by the Vessel and Owners to
173  *Howe Robinson Shipbrokers Hong Kong* .................................................................................................................................................
174  on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175  28. An address commission of ~~2 1/2~~ *3.75* per cent payable to ..........*Charterers* ......................................... on the hire earned and paid under this Charter.

Clauses ..*29*.. to ..*94*.. inclusive as attached hereto, are deemed to be fully incorporated in this charter party.


Owners                                                    Charterers

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

---

**Clause 29       Cargo Exclusion Clause**

Bulk harmless Iron ore (but always excluding concentrate/HBI/DRI/DPI/sponge iron.


**Clause 30       Trading Limits**

India, Singapore, PRC always to be allowed.

All war and war-like zones, lightening from or into another vessel/craft, regular coastal or intercoastals trading, double-banking, vessel not to make direct call(s) between Taiwan and China. Vessel not to force ice of follow icebreakers.

**Clause 31       Stevedore Damage Clause**

The stevedore although appointed and paid for by the Charterers, Shippers or Receivers or their agents to remain under the direction and control of master, Charterers are not to be responsible for stevedore or other damage to the vessel unless notified, in writing, by the Master at time of discovery of damage or latest twenty four (24) hours after damage, or upon discovery of hidden damages.  Master is to co-operate with Charterers and agents in giving prompt notice of claim, in writing to party causing damage.  The Charterers have the option of redelivering the vessel even if damages not repaired provided same does not affect seaworthiness or class of the vessel.  The Owners agree that damage not affecting seaworthiness or class may remain for occasional repair when the ship is to be docked for Owners' account so that the responsible party to pay the actual cost of repair of damage but not the time used.  Damages affecting vessel's seaworthiness or class or fitness to carry her next cargo shall be repaired immediately, and all time between completion of loading/discharging and completion of repairs shall count as time on hire.

**Clause 32**

Vessel to have on delivery and maintain during currency of charter valid sanitary and deratisation certificates.

**Clause 33**

A joint on and off hire surveys to be held at delivery port or at first loading port and redelivery port respectively.  Costs to be shared equally.  On-hire survey in Owners' time, off-hires survey in Charterers' time.

**Clause 34**

The Owners guarantee that the vessel is eligible for bunkers in the United States of America, its territories and possessions in accordance with U.S. Department of Commerce office of International Trade Directive No. 705.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

------------------------------------------------------------------------------------------------

**Clause 35**

Owners guarantee that the vessel has never called at any port in Cuba.  Owners guarantee that the vessel is not blacklisted by the International Longshoremen Associations or any Arab country nor local union due to previous trade.

**Clause 36**

Vessel to have certificate for loading grain without grain fittings when full holds and understood vessel can sail with one or two slack holds without bagging or shifting boards.

**Clause 37**

If war breaks out between any two or more of the following countries: U.K. U.S.A., C.I.S., France, People's Republic of China, Japan, Norway, Republic of Guinea, both the Owners an Charterers shall have the right to cancel this Charter Party.

**Clause 38**

New Jason Clause, New Both –to-Blame Collision Clause and CONWARTIME 1993, as attached, are to be considered part of this Charter Party and are to be included in Bills of Lading issued hereunder.  Clause Paramount, P and I Bunker Deviation Clause to be also included in Bills of Lading issued under this Charter Party.

All Bills of Lading to contain provision to the effect that any dispute arising under Bills of Lading between Owners and Holder of Bills of lading shall be arbitrated in accordance with the terms and provisions set for by Clause 17 of this Charter party.  if Owners are called responsible in excess to the terms of above Clauses Charterers undertake to indemnify Owners to the extent of such additional liabilities.

**Clause 39**

Should the vessel be put back on a voyage contrary to the orders or directions of the Charterers for any reason other than accident to the cargo, the hire shall be suspended from time of her putting back until she is again in the same position or equivalent and voyage resumed therefrom.  The time so lost and the cost of any extra fuel consumed in consequence thereof and all extra expenses shall be deducted from hire.  In the event of the vessel being driven into port or to anchorage through stress of weather, trading to shallow harbours or to rivers or port with bars, any detention of the vessel and/or expenses resulting therefrom shall be for Charterers' account.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-------------------------------------------------------------------------------------

### Clause 40

Should the vessel be arrested during the currency of this Charter party at the suit of any person having or purporting to have a claim against or any interest in the vessel, hire under this Charter party shall not be payable in respect of any period whilst the vessel remained unemployed as a result of such arrest, ie. The state of arrest having no bearing on hire unless vessel be prevented from working hereby. However should the arrest be instigated by an alleged fault of the Charterers or should the arrest not interfere with the working of the vessel hire to continued.

### Clause 41

It is understood that vessel will comply with any safety regulations and/or requirements in effect at ports of loading and/or discharging, a particular reference is the United States Department of Labour Safety and Health Regulations set forth in Part III of the Federal Register. Although other provisions of this Time Charter make it the responsibility of the Owners it is agreed that should the vessel not meet these Safety Rules and regulations, Owners will make immediate corrective measure and any stevedore standby time and other expenses involved, including off hire will be for Owners' account.

### Clause 42

Any deviation in saving or attempting to save life or property at sea shall not be an infringement or breach of this charter or of the contract of carriage and the carrier shall not be liable for any loss or damage resulting therefrom nor shall the vessel be off hire.

### Clause 43

Should the vessel be boycotted, blockaded or blacklisted, in any port or place because of her Ownership, management, flag or crew, or conditions on which the crew are employed, all expenses, delays or other consequences to be for Owners' account.

### Clause 44

Neither the Charterers nor their agents shall permit the issue of any Bill of Lading, waybill or other document evidencing a contract of carriage ( whether or not signed on behalf of the owner or on the Charterer's behalf or on behalf of any sub-charterers). Incorporating the Hamburg rules or any other legislation giving effect to the Hamburg rules or any other legislation imposing liabilities in excess of Hague or Hague/visby rules. The Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**
--------------------------------------------------------------------------------

## Clause 45

Vessel has not called Russian Pacific port during the past 24 months. Owners guarantee that the vessel has never called at any port in Cuba.

Owners to warrant vessel is a self trimming single deck bulk carrier and can load a full and complete cargo in each hold according to the latest SOLAS regulations.

Owners guarantee vessel is not blacklisted in any port of call with ITF/WWF in good order for the whole period of this Charter Party.

## Clause 46    Cleaning Clause

The vessel on arrival first load port to present with all holds clean, dry free from rust scale and cargo residues to the jointly appointed surveyor's satisfaction, failing which the vessel will be off hire for the time lost caused thereby and any/all actual costs resulting directly therefrom shall be for Owners' account. If failing Owners immediately to take all necessary steps, including but not limited to hiring shore labours to have the vessel passed with minimum delay.

If some holds approved and shippers start loading same then full hire to apply.

Charterers to pay USD4500 lumpsum in lieu of hold cleaning on redelivery.

## Clause 47

Bunkers on delivery to be about 1500 metric tons of IFO and about 150 metric tons MDO.
Bunkers on redelivery to be about same as on delivery.
Charterers to pay with first hire payment plus value of estimate consumable bunker to reach Singapore within 3 banking days.
Prices both ends USD280 per metric ton for IFO and USD530 per metric ton for MGO.

Charterers have the right to deduct same from last sufficient hire payment(s).

Charterers' to pay with first hire payment plus value of estimated consumable bunkers to enable vessel to reach Singapore within 3 banking days.

## Clause 48

Vessel is self trimming bulk carrier strengthened for loading. Vessel to be suitable for grab discharge and no cargo to be loaded in places inaccessible for grab discharge or in deep tanks. Any time lost lowing to cargo being loaded in such inaccessible place to be considered off hire, and any additional discharging costs to be for Owners' account. Charterers privilege to use bulldozers in the holds up to maximum allowed tank top strength.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

--------------------------------------------------------------------------------------

**Clause 49**

Charterers have the benefit of any return insurance premium receivable by the Owners from their Underwriters as and when received by Underwriters by reason of vessel being in port for a minimum period of one month.

**Clause 50        Bills of Lading Clause**

If required by Charterers, Charterers or Charterers' option Charterers' agent to issue Bills of Lading in conformity with Mate's receipt.

In the absence of original Bills of Lading at discharge port(s), Owners / Master to allow cargo to be discharge and delivered in accordance with Charterers' instructions against Charterers' Letter of Indemnity only, in Owners standard P and I Club wording, with no bank endorsement.

If required by Charterers, Charterers or Charterers agents to issue second set Bills of Lading in Hong Kong Marked "Cleaned on Board, Fright Prepaid", "Freight to Collect", or "Freight Payable as per Charter Party" and marked difference shippers/receivers/notify party than those in the first set Bills of Lading against Charterers single Letter of Indemnity in Owners P and I Club standard wording or format without bank guarantee and/or bank endorsement. Charterers to return first sent Bills of Lading immediately on receiving same.

**Clause 51        Water Pollution Clause**

Owners warrant to have secured and carry on board the vessel all US Federal Maritime Commission Certificates of Financial Responsibility required by the Federal Water Pollution Control Act (33 USC 1321) as amended by the Clean Water Act of 1977 and as may be from time to time amended in the future, an any other certificate(s) required by any official Government body.

Any time lost on account of vessel's non-compliance with Government and/or State and/or Provincial regulations pertaining to water pollution shall be considered as off hire.

**Clause 52**

Charterers to give 15 days approximate notice of expected redelivery date and probable port, then 10/7 days approximate notice of redelivery and 5/3/2/1 days final notice of redelivery.

**Clause 53**

Vessel is to have on board at all times during this timecharter, valid documents and certificates issued by vessel's classification society and certified by National Cargo Bureau or the Port Warden if in Canada, on the basis of the SOLAS 1968 Regulations or any new regulations which may from time to time come into force replacing same.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17ᵗʰ NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

--------------------------------------------------------------------------------------------

**Clause 54       Seaway Bills Clause**

The Master shall sign the Bills of Lading or Waybills for cargo as presented in conformity with Mate's and/or tally clerk's receipts.  However, the Charterers may sign Bills of lading or Waybills on behalf of the Master, with the Owners' prior written authority, always in conformity with Master and/or tally clerk's receipts.

All Bills of lading or Waybill shall be without prejudice to this Charter party and the Charterers shall indemnify the owners against all consequences or liabilities which may arise from any inconsistency between this Charter party and any Bills of lading or waybills by the Charterers or by the Master at their request.

**Clause 55**

Vessel to work day and night if required by Charterers.   If the vessel's gear for opening and closing of hatches, becomes inoperative, vessel to be off hire and stevedores standby time for any loss of time occasioned thereby, to be for Owners' account. Such off hire to be calculated pro rata and only to count if ship's loading or discharging is delayed.  If vessel is to lift grain cargoes all intermittent opening and closing of hatches for Charterers' account if performed by shore labour but to be performed by vessel's crew if permitted by local authorities.

**Clause 56**

Owners warrant that the vessel and all her capacities as described in this Charter will be thoroughly maintained throughout the duration of this Charter.   Furthermore, Owners undertake that, throughout the period of service under this Charter, they will whenever the passage of time, wear and tear or any event requires, take steps to maintain this vessel as stipulated on the face of this Charter Party and in this Clause.

**Clause 57**

Deleted.

**Clause 58**

Deleted.

**Clause 59**

Cargo claims shall be settled in accordance with the Inter Club New York Produce Exchange Agreement of February 1970 and reprints of May 1972 and May 1984 and September 1996.

**Clause 60**

Deleted.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

------------------------------------------------------------------------------------

**Clause 61    Vessel's description: All details "about"**

MV HEBEI EXPRESS

SDBC, 84 BLT , HKG FLAG
DWT 65,204 MT ON SSW 12.355 M  TPC 72.44 ,
GRT/NRT 39537/23773 , LOA/BM 253.93/32.28 M
9 HOLDS/11 HATCHES  GEARLESS
CAPACITY :
1) 6,302.0  2) 13,408.5  3) 7,999.8  4) 9,186.0
5) 9,186.0  6) 9,186.0  7) 7,999.2  8) 13,959.5  9) 6,770.8
TTL 83,997.2 CBM
HATCH SIZE : 1) 11.00 X 15.60  2A.2B.3.4.5.6.7.8A. 8B. 9)
11.70 X 15.60
ABOUT 12.5/L , 13.0/B ON ABOUT 29.5/L, 29/B  IFO180CST (RME 25)
PLUS ABT 2.5 MT OF MGO ( DMA) AT SEA
IN PORT ABT 2.8 MT MGO IDLE WORKING 3.0 MT MGO
THE SPEED/CONSUMPTION BSS GOOD WEATHER AND SEA CONDITION
UPTO BFT4 AND DGLS 3 AND NOADVERS CURRENT VSL M/E MAY
CONSUME MGO WHEN NECESSARY AT MASTER DISCRETION

ALL DETAILS ABOUT

**Clause 62    Drug/Alcohol Clause**

The Charterers expect that the Owners/Disponent Owners has guidelines on drug and alcohol abuse applicable to the vessel with the object that no seafarer will navigate a ship or operate its on board equipment while impaired by drugs or alcohol.  And that no seafarer will have the use of possession of, or the opportunity to sell or distribute or transport illicit or non-prescribed drugs aboard the vessel.   Further, Charterers expect that the Owners/Disponent Owners exercise due diligence throughout the period of the Charter party to ensure that such guidelines are complied with.

**Clause 63**

Referring to Lines 60 and 61, where there is any failure to make punctual and regular payment, due to oversight or negligence or error or omission of Charterers' employees, bankers or agents.  Owners shall notify Charterers in writing whereupon Charterers will have three banking days to rectify the failure and where so rectified the payment shall stand as punctual and regular payment.

**Clause 64**

Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers' account, if caused by Charterers or by Charterers' servants and to be for Owners' account if caused by Master, Officers, Crew or Owners' servants.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17ᵗʰ NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

---

### Clause 65

If, for any reason other than accident to the cargo, the vessel will be off hire or is reasonably estimated to be off hire for 12 (twelve) days, charterers have the option to cancel the balance of this Charter Party, provided the voyage in force at the time of the accident is terminated and no cargo is on board.

### Clause 66

Owners shall maintain and carry on board a valid P and I Entry Certificate containing the oil pollution Limitation of cover Clause.

Owners by production of a Certificate of Insurance or otherwise shall satisfy the requirements of (A) section 311 (P) of the United States Federal Pollution Control Act, as amended through 1973 (33 US Code, Section 1321, (P), (B) Article VII of the International Convention of Civil Liability for Oil Pollution Damage 1969 as far as applicable.  Save as aforesaid Owners shall not be required by Charterers to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel to lawfully enter, remain in or leave any port, place, territorial or contiguous waters or any country, state or territory, in performance of this Charter Party.

### Clause 67

Any extra insurance, if any, due to vessel's age, flag, class, country of Registry, to be for Charterers' account.

### Clause 68     Deballasting Clause

Charterers have the right to instruct Master to utilize the vessel's maximum water ballast capacity, and eventually to flood No.4 hold only with water in order to bring down vessel's height to get into position under loading and/or discharging appliances. However, always in conformity to free board and/or safety requirements.

### Clause 69

For the purpose of computing hire payment the time for delivery/redelivery shall be adjusted to GMT.  Clause headings are inserted for convenience of reference only and shall be ignored in the interpretation of this Charter Party.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

------------------------------------------------------------------------------------------------

<u>Clause 70</u>     <u>Double Banking Clause</u>

The Charterers to have the privilege to double-bank the vessel, i.e. may order the vessel alongside any other vessel or vice-versa. However, all equipment and arrangements (including arrangement of fenders in good condition of at least the size and type of so called Yokohama fenders or likewise to be put between vessels), any additional time and any responsibility (with regard to possible damage to the Vessel or to any third party) arising form such double-banking operation to be for Charterers' account. Such double-bank vessel and vessel operations always to be to Master's full satisfaction regarding general safety and equipment which to be used. Master always having the right to order the lightening vessel to vacate/or shift provided in Master opinion (which to be reasonably justified) he considers it unsafe for such lightening operations to be further continued.

<u>Clause 71</u>

Owners guarantee that the vessel's hatchcovers are to be watertight all through this Charter period and if any hatchcover found defective same to be rectified at Owners' time and expenses to Charterers' satisfaction.

<u>Clause 72</u>

The Charterers may supply an independent weather routing company/ies advice to the maser during voyages specified by the Charterers. The Master shall comply with the reporting procedures of the routing service selected by the Charterers. Evidence of weather conditions shall be taken from the vessel/ies deck logs and the weather routing company/ies report.

<u>Clause 73</u>

The Master is to send the Charterers from load and discharge port the deck and engine logs in English covering voyage and port time if Charterers request it.

<u>Clause 74</u>

The Charterers to pay the Owners USD1250 per month pro rata for victualling, communication including fax/telex/representation/entertainment included bonded store per month.

<u>Clause 75</u>

The deadweight amount of constants, draft speed and daily consumption of the vessel as stipulated in this Charter Party are representative by the Owners.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

----------------------------------------------------------------------------------------

**Clause 76**

After vessel has passed inspection(s) as per Charter Party, Charterers privilege to fumigate hold(s) and/or cargo at their or Sellers or Shippers expenses including shore accommodation for crew and actual time used to count as laytime (vessel to be considered on hire) as per Charter Party.

**Clause 77**

Deleted.

**Clause 78**

First 15 days hire plus estimated consumable bunker values of this voyage to be paid to Owners nominated bank/account within 3 banking days after vessel's delivery, thereafter every 15 days in advance.

Owners' bank details as follows,
----------------------------------
Account Name: Stogran International Ltd.
A/C no.: 02753293054622
Beneficiary's Bank: Bank of Communications Hong Kong,
Swift Code: COMMHKHH
Corresponding Bank: Bank of Communications, New York,
Swift Code: COMMUS33, A/C No.: 010340402

**Clause 79**

Liability to third parties for cargo claims shall be shared by the Owners and the Charterers in accordance with inter club , New York Produce Exchange Agreement date 20th February, 1970, or any amendments thereto . Any cargo claims should be immediately referred to the other party with supporting documents for negotiation.

**Clause 80**

Deleted.

**Clause 81**

Deleted

**Clause 82**

Deleted.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-------------------------------------------------------------------------------------

**Clause 83**

Watchmen to be for the account of the party ordering same unless this service is compulsory as custom of the port in which case to be for Charterers' account.

**Clause 84**

No drydocking during the currency of this Charter Party except in emergency.

**Clause 85**

Deleted.

**Clause 86**

Owners should be responsible for any time and expenses caused by failing in "Asian Gypsy Moth" inspection both at Canadian and U.S. Ports.  Any expenses incurred thereby at loading ports and discharging ports to be for Owners' account.

**Clause 87**

All negotiations and eventual fixture to be kept strictly private and confidential.

**Clause 88**

Deleted.

**Clause 89    ISM Clause**

From the date of coming into force of the International Safety Management (ISM) Code in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and 'the Company' (as defined by the ISM Code) shall comply with the requirements of the ISM Code.

Upon request the Owners shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers.

Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of the Owners or 'the Company' to comply with the ISM Code shall be for the Owners' account.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

--------------------------------------------------------------------------------

**Clause 90        Bunker Specification Clause**

Charterers to supply bunkers using only Fuel Oil 180 CST with specification ISO 8217 (2005E) Grade RME 180 and Diesel oil with specifications ISO 8217 (2005E) Grade DMA distillate. Charterers have the option to supply 180 CST (RMF 25) in case of South Africa bunkering needed. To maintain the right to claim against suppliers for possible sub-standard fuel, vessel to take samples of the fuel during bunkering either by Automatic Drip Sampling Device (if installed) or by proper drip sampling at manifold throughout the whole bunkering period. Any complaints regarding bunker quality must be presented within 30 days after bunkering and documented with proper analysis based on sample taken as described above.

**Clause 91**

Owners also warrant all crews will cooperate with Charterers or Charterers representative at both ends.

**Clause 92**

Arbitration/General Average in London. English law to apply.

**Clause 93**

Deleted.

**Clause 94**

Any P.R.C. tonnage dues certificate purchased by the Charterers is the property of the Charterers. Subject to Charterers prior permission, Owners/future Charterers of the Vessel may be permitted to use such certificate for subsequent employment at a cost of 50 per cent of the original purchase price.

**Clause 95**

BIMCO ISM Clause to apply.

**Clause 96**

BIMCO Year 2000 Clauses to apply.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17ᵗʰ NOVEMBER, 2006**
**ADDITIONAL CLAUSES**
------------------------------------------------------------------------------------------

CHARTERERS QUESTIONNAIRE

1) OWNERS/DIS OWNERS FULL STYLE :
   HEBEI COURAGE SHIPPING CO.,LTD  HONGKONG

2) MANAGER'S FULL STYLE
   HEBEI OCEAN SHIPPING CO.,LTD

3) VESSEL'S PNI CLUB : CPI

4) VESSEL'S HNM VALUE : USD8MILLION

5) VESSEL'S FO/DO/FW TANK CAPACITIES : ABT 3493.80/232.40/401.30CBM

6) VESSEL'S ITINERARY AND LAST 3 CARGOES
   ETA ROZI 12 NOV,ETD 21 NOV

   FERTILIZER/BAUXITE/MINERALS

7) VESSEL'S CLASS:  CCS
   OWNERS CONFIRM VSL FULLY CLASSED AND WILL

   REMAIN SO CLASSED DURING THE PERIOD OF CHARTER.  YES

8) VSL STRENGTHENED FOR HEAVY CARGO AND CLASSED FOR :    YES

   ALTERNATE HOLD LOADING : NO

9) VESSEL'S CONSTANT AND TPC/TPI : ABT 550MT  67.5

10) VESSEL'S DWAT AND TPC ON 11.8M/12/12.5M SSW
    AT 12.0M SSW  60683  66.5

11) VESSEL'S WLTHC IN LIGHT/HEAVY BALLAST CONDITION OR
    ABT 16.6M/15.5M VSL'S WLTHC IN BALLASTED/FULLY
    LADEN  CONDITION ABT 9.71M

12) NATIONALITY OF OFFICERS AND CREW
    ALL CHINESE

13) VESSEL'S HATCH SIZE
    14.85 X 14.00 M

14) VESSEL'S GRAIN CAPACITY B/D BY HOLD
    9845.5/11906.3/11951.7/11953.4/11951.7/11953.3/11787.7CUM

15) VESSEL SUITABLE FOR GRAB DISCHARGE :  YES

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**
-------------------------------------------------------------------------------------------

16) VESSEL'S DEBALLASTING TIME : ABOUT 25 HOURS

17) VESSEL'S GRT/NRT : 42009/20416

18) VESSEL'S MAX/ALTERNATE SPEED/CONS : PER RECAP

19) VESSEL'S INMARSAT/TLX NO.  : 447772510/447772511

20) OWNERS CONFIRM VSL CAN MAINTAIN MAX 13M WLTHC
THOROUGHT LOADING BASIS ONE LOADING ARM :  NO

21) OWNERS CONFIRM THAT IF LOADING MADRAS VESSEL'S
    ARRIVAL DRAFT AT LOAD PORT WILL BE MIN 19FT FORE AND
    24FT AFT : YES

22) PLEASE CONFIRM OWNERS' HAVE A VALID ISSC:  YES
    PLEASE FAX A COPY OF SAME.

23) PLEASE ADVISE CSO AND SSO DETAILS:
    NING ZHAO LIN +86-335-3639126
    CHIEF OFFICER

24) PLEASE ADVISE HEAD-OWNER'S FULL STYLE AND ADDRESS:
    HEBEI COURAGE SHIPPING CO.,LTD
    Room 3503 - 3511, 35/f, West Tower, Shun Tak Centre,
    168-200 Connaught Road Central, Sheung Wan, Hong Kong
    Tel: +852-3184 2000  Fax: +852-3184 2080

25) PLEASE ADVISE LAST 10 PORTS OF CALL:
    ROZI/SUEZ/BEAUMONT/CORPUS CHRISTI/
    TROMBETAS/NEW ORLEANS/ALTAMIRA/PANAMA/XINGANG

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-------------------------------------------------------------------------------------------

### NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply:

### BOTH-TO-BLAME COLLISION CLAUSE

"If the ship comes into collision with another ship as result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other  non-carrying ship or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

and the Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

### GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be adjusted according to York/Antwerp Rules, 1974, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-------------------------------------------------------------------------------------

**CONWARTIME 1993**

1.      For the purpose of this Clause, the words:

        (a)     "Owners" shall include the shipowners, bareboat Charterers, disponent owners, managers or other operators who are charged with the management of the vessel, and the Master; and

        (b)     "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2.      The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3.      The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or Ownership, or against certain cargoes or crews otherwise howsoever, or to proceed to an area where she shall be subject or is likely to be subject to a belligerent's right of search and/or confiscation.

4.      (a)     The Owners may effect war risks insurance in respect of Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks) and the premiums and/or calls therefore shall be for their account.

        (b)     If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5.      If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-------------------------------------------------------------------------------------

### CONWARTIME 1993 (Cont'd)

6.      The vessel shall have liberty:

        (a)      to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the government of the nation under whose flag the vessel sails, or other government to whose laws the Owners are subject, or any other government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

        (b)      to comply with the order, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

        (c)      to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

        (d)      to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier;

        (e)      to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

7.      If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging port, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8.      If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

**M.V. HEBEI EXPRESS**
**CHARTER PARTY DATED 17th NOVEMBER, 2006**
**ADDITIONAL CLAUSES**

-----------------------------------------------------------------------------------------------------------

**BIMCO Bunker Fuel Sulphur Content Clause for Time Charter Parties 2005**

(a)  Without prejudice to anything else contained in this Charter Party, the Charterers shall supply fuels of such specifications and grades to permit the Vessel, at all times, to comply with the maximum sulphur content requirements of any emission control zone when the Vessel is ordered to trade within that zone.

   The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and 18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision of bunker delivery notices.

   The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss, liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to comply with this sub-clause (a).

(b)  Provided always that the Charterers have fulfilled their obligations in respect of the supply of fuels in accordance with sub-clause (a), the Owners warrant that:

   (i)   the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with the requirements of any emission control zone; and
   (ii)  the Vessel shall be able to consume fuels of the required sulphur content.

   when ordered by the Charterers to trade within any such zone.

   Subject to having supplied the Vessel with fuels in accordance with sub-clause (a) the Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex VI.

(c)  For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as, but not limited to, the EU and the US Environmental Protection Agency.

# EXHIBIT
# 2

Cao Rui

| | |
|---|---|
| 寄件者: | "Wendy, Yang Weiwei" <wendy@bromar.com.cn> |
| 收件者: | "Lv Huan Hong" <ops@northchina.com.hk> |
| 副本: | "Bromar ops" <ops@bromar.com.cn> |
| 傳送日期: | Thursday, 4 January, 2007 22:09 |
| 主旨: | RE: MV. Hebei express / Tnt----hire payment |

Good day from Bromar Maritime Co. ltd!

Pub:86-21-58215780  Fax:86-21-58215769

Email: chartering@bromar.com.cn

Dear Mr.Cao/Wendy

Pls kindly find below msg from Chrs.

====qte====

REF TELCON, CHTRS CONFIRM THAT THEY WILL PAID THE HIRE TO OWNERS FM THE TIME
OF NOR TENDERING

===unqte===


Thanks & Best Regards

Wendy, Yang Weiwei
Mob: +86-13916026560
Msn: wendyang521@hotmail.com

4/1/2007

TO: NCL HK   CAPT CAO

FM: HEBEI EXPRESS

## NOTICE OF READINESS

TO: MESSRS SINOAGENT LANSHAN          DATE: 04TH JAN., 2007

LANSHAN, CHINA

THIS IS TO INFORM YOU THAT **MV HEBEI EXPRESS** UNDER MY COMMAND ARRVED AT LANSHAN PORT CHINA AT **1930HRS ON 04TH JAN., 2007** AND IS READY IN ALL RESPECTS TO COMMENCE **LOADING SLAG IN BULK** AT THIS TIME WITH CHARTERERS CIMEC.

NOTICE OF READINESS TENDERED AT **1930HRS ON 04TH JAN., 2007**

------------------------------------------

MASTER'S SIGNATURE

NOTICE OF READINESS ACCEPTED AS PER CHARTER PARTY

------------------------------------------

AS AGENT ONLY

# EXHIBIT
# 3

**Final Hire Statement**

**CHARTERERS : TRANSNATIONAL TRADING DUBAI**
**OWNERS : STOGRAN INTERNATIONAL LTD - BROKERS: JM BUXI - Mr Dhall**

| | | | |
|---|---|---|---|
| Delivery | : | 04/01/2007 23:30 | (LOCAL TIME) |
| | | 04/01/2007 15:30 | (GMT) |
| Redelivery | : | 11/02/2007 16:00 | (LOCAL TIME) |
| | | 11/02/2007 12:00 | (GMT) |

DATE : 26 MAR 07
VESSEL:MV.HEBEI EXPRESS
C/P DATE : 3 JAN 07

| NO | PARTICULARS | | | | | D R. | C R. |
|---|---|---|---|---|---|---|---|
| 1 | HIRE | | | | | | |
| | FM : 1530 HRS 4JAN 2007 (GMT) @ APS LANSHAN (CHINA) | | | | | | |
| | TO: 1200 HRS 11 FEB 2007 (GMT) @ PASSING MUSCAT (PMO) | | | | | | |
| | 37.85416667 | | | | | | |
| | 37.85417 | days | X | $24,500 | $927,427.08 | | |
| | 0.00000 | Ballast Bonus | | | $55,000.00 | | |
| | | | | | $982,427.08 | | |
| 2 | (LESS) Off hire | | | | | | |
| | 0.000000 | days | X | $24,500 | $0.00 | | |
| | 0.000000 | days | X | $0 | $0.00 | | |
| | Bal 37.85417 | days | | | | | $982,427.08 |
| 3 | (LESS) 2.5% ADCOM | | | | | $24,560.68 | |
| | (LESS) 0.625% TO JM BUXI | | | | | $6,140.17 | |
| 4 | Bunker on delivery | | | | | | |
| | FO 1303.200 | mt | X | $300.00 | | | $390,960.00 |
| | MDO 147.200 | mt | X | $600.00 | | | $88,320.00 |
| 5 | Bunker on redelivery | | | | | | |
| | FO 1298.200 | mt | X | $300.00 | | $389,460.00 | |
| | MDO 142.920 | mt | X | $600.00 | | $85,752.00 | |
| 6 | (LESS) Bunker off hire consumed | | | | | | |
| | MDO 0.00 | mt | x | $600.00 | | | $0.00 |
| | FO 0.00 | mt | x | $300.00 | | | $0.00 |
| 7 | CABLE/VICTUALLING/ENTERTAINMENT CHARGE | | | | | | $1,577.26 |
| | 37.85417 | days | x | $1,250 /month | $1,577.26 | | |
| 8 | ILOHC | | | | | | $4,500.00 |
| 9 | On-hire bunker survey fees @ 50% for ows acct ( Usd 400) | | | | | 200.00 | |
| | Off hire bunker survey fees @50% for ows acct ( Usd 410) | | | | | 205.00 | |
| 10 | (Less )Owners Expenses (1 USD=3.6AED) | | | | | 100.00 | |
| | Garbage Disposal Charges at Load Port | | | | | | |
| 11 | (Less) Hire Payment | | | | | $887,028.75 | |
| | 1st hire | | | | $408,720.00 | | |
| | 2nd hire | | | | $223,633.52 | | |
| | 3rd hire | | | | $33,075.65 | | |
| | 4th hire | | | | $150,396.46 | | |
| | 5th Hire | | | | $71,203.12 | | |
| | | | | | | $1,393,446.60 | $1,467,784.34 |
| | BALANCE AMT DUE TO OWS | | | | | $74,337.74 | |
| | | | | | | $1,467,784.34 | $1,467,784.34 |

# EXHIBIT
# 4

# W. ROBERTSON
## F.I.C.S., A.C.I.arb

*The Atlas Room*
*37 Woodpecker Crescent*
*Burgess Hill*
*West Sussex*
*RH15 9XY*
*United Kingdom*



LMAA

*Telephone: 01444 876940*
*Facsimile: 01444 876941*
*Mobile: 07732 350913*
*Residence: 01444 457136*
*E-mail: william@robmarine.com*

---

## FACSIMILE MESSAGE

---

Date: Tuesday, May 01, 2007            Time: 14:37:42

To:    North China Lines Ltd., Hong Kong    Attn: Eric Chu
Fax:   00 852 3184 4419                     Ref:

From:  William Robertson                    Ref:   WR/07/3106/mw
Re:    m.v. "HEBEI EXPRESS" ~ C/P 03.01.07
Pages: 1


Further to your fax of earlier today, I confirm my acceptance of
appointment as Arbitrator for the Owners of the m.v. "Hebei Express",
Hebei Express Shipping Co. Ltd. of Hong Kong, in respect of disputes that
have arisen under the Charterparty dated 3 January 2007 with the
Charterers, Transnational Trading of U.A.E.

I confirm acceptance on the basis of current LMAA terms and my formal
letter follows.

Many thanks for your kind appointment.

Best regards,


**W. Robertson**